IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois,<br><br>      **Plaintiff,**<br><br>      v.<br><br>FACEBOOK, INC., a Delaware Corporation, SCL GROUP LIMITED, a United Kingdom private limited company, and CAMBRIDGE ANALYTICA LLC, a Delaware Limited Liability Company,<br><br>      **Defendants.** | Civil Action No.: 1:18-cv-02667<br>Hon. Robert M. Dow, Jr. |

**DEFENDANT FACEBOOK INC.'S MOTION TO STAY PROCEEDINGS
PENDING RULING BY JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

      **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

This case is one of 21 closely related cases recently filed against Facebook, Inc. and Cambridge Analytica following press reports that Cambridge Analytica misused Facebook user data. All of these cases raise similar claims based on similar legal and factual issues. The plaintiffs in several of the cases have requested that the Judicial Panel on Multidistrict Litigation transfer and consolidate the cases before a single district court, and Facebook has filed a response expressing agreement that transfer and consolidation are appropriate. The Panel has scheduled a hearing on May 31, 2018, and is likely to decide the motion to transfer shortly thereafter. The only two jurisdictions that have been suggested to the Panel by any parties as potential transferee courts are the Northern District of California (where the majority of the cases currently are pending) and the Southern District of Texas. Thus, there is a strong likelihood that this case will be transferred to a different district for consolidated pre-trial proceedings.

1

Facebook respectfully requests that this case be stayed temporarily until the Panel renders its decision on the pending motion.

*First*, a stay would promote the "compelling public interest" in judicial economy. *Paul v. Aviva Life & Annuity Co.*, 2009 WL 2244766, at *1 (N.D. Ill. July 27, 2009). Absent a stay, this Court would "run the risk of expending valuable judicial resources familiarizing [it]self with the intricacies of a case that may be coordinated or consoli[dated] for pretrial purposes in another court." *Id*.

*Second*, the brief stay that Facebook seeks will cause no prejudice to Plaintiff, as this case is still in its early stages and discovery has not commenced. Indeed, all parties ultimately may benefit from avoiding the needless duplication of effort that would occur if briefing and case management in this Court were rendered moot by a transfer to a different district. *See Ernyes-Kofler v. Sanofi S.A.*, 2017 WL 813506, at *2 (N.D. Cal. Mar. 2, 2017) (a stay "might help Plaintiffs avoid unnecessary effort and expense").

*Third*, any "minor" prejudice to Plaintiff as a result of a brief stay (*Paul*, 2009 WL 2244766, at *1) is outweighed by the risk of inconsistent rulings and prejudice that would result if the parties were forced to litigate nearly identical cases in multiple districts. "[T]he potential prejudice to [defendants] if [they are] required to re-argue the same issues before various courts is greater than the potential prejudice Plaintiffs may face as a result of a slight delay because of the issuance of a stay." *Estate of Hoholek v. AbbVie, Inc.*, 2014 WL 7205586, at *3 (N.D. Ind. Dec. 17, 2014).

For these reasons, a stay of this case pending the Panel's decision would best serve the interests of the Court and the parties in conserving judicial resources, avoiding duplicative litigation, and avoiding inconsistent rulings—the very interests the MDL procedure was designed to promote.

## II.     BACKGROUND

In the wake of recent press reports describing Cambridge Analytica's misuse of Facebook user data,[1] a series of actions were filed in courts around the country against Facebook and Cambridge Analytica (among others).  All of the actions arise from the same alleged facts:  that a third-party app developer named Aleksandr Kogan, beginning in 2013, used an app he created to obtain information about Facebook users by paying them to take a personality test; that Kogan collected information about those individuals and their Facebook "friends" and then shared that information, through his company Global Science Research ("GSR"), with Cambridge Analytica, contrary to Facebook's terms and policies; that Kogan, GSR, Cambridge Analytica, and others each certified that they had deleted this data as demanded by Facebook; and that Cambridge Analytica nevertheless apparently used the data to target advertisements in connection with the 2016 U.S. Presidential election.

The actions filed in connection with these events fall into three broad categories: (1) three shareholder class actions brought under the federal securities laws;[2] (2) five shareholder derivative class actions;[3] and (3) twenty-one actions, including this one, alleging harm to Facebook users due to the alleged misuse of their data.  This last group of cases are currently pending in eight different districts:  the Northern District of Illinois (two cases, including this

---

[1] M. Rosenberg, N. Confessore & C. Cadwalladr, *How Trump "Consultants" Exploited the Facebook Data of Millions*, N.Y. Times (Mar. 17, 2018), https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html; C. Cadwalladr & E. Graham-Harrison, *Revealed:  50 Million Facebook Profiles Harvested for Cambridge Analytica in Major Data Breach*, The Guardian (Mar. 17, 2018), https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.

[2] *Yuan v. Facebook, Inc.*, No. 5:18-CV-01725 (N.D. Cal.) (filed Mar. 20, 2018) (Davila, J.); *Ernestine v. Facebook, Inc.*, No. 3:18-CV-01868 (N.D. Cal.) (filed Mar. 27, 2018) (Alsup, J.); *Casey v. Facebook, Inc.*, No. 5:18-CV-01780 (N.D. Cal.) (dismissed on April 13, 2018).

[3] *Hallisey v. Zuckerberg*, 3:18-CV-10792 (N.D. Cal.) (filed Mar. 22, 2018) (Gilliam, J.); *Martin v. Zuckerberg*, No. 4:18-CV-01834 (N.D. Cal.) (filed Mar. 23, 2018) (Alsup, J.); *Ocegueda v. Zuckerberg*, No. 4:18-CV-01893 (N.D. Cal.) (filed Mar. 27, 2018) (Chhabria, J.); *Karon v. Facebook, Inc.*, No. 5:18-CV-01929 (filed Mar. 29, 2018) (N.D. Cal.) (Davila, J.); *Stricklin Trust v. Zuckerberg*, 3:18-CV-2011 (filed Apr. 2, 2018) (Corley, Mag.).

3

one);[4] the Central District of Illinois (one case);[5] the Northern District of California (thirteen cases);[6] the Central District of California (one case);[7] the Southern District of Texas (one case);[8] the District of Delaware (one case);[9] the Northern District of Alabama (one case);[10] and the District of New Jersey (one case).[11]

It is this last set of cases—alleging harm to Facebook users—that are the subject of the pending MDL motion. These cases substantially overlap in many ways. Each alleges that Facebook users were harmed when Cambridge Analytica allegedly obtained and used their data. Nineteen of the complaints assert that this data allegedly was obtained via Kogan's app, "thisisyourdigitallife." Fifteen of the actions name both Facebook and Cambridge Analytica as defendants, and six—*Lodowski*, *Malskoff*, *Rubin*, *Kooser*, *O'Hara*, and *Redmond*—also name either Kogan or GSR.[12]

---

[4] *People of the State of Illinois v. Facebook, Inc.*, No. 1:18-CV-02667 (N.D. Ill.) (filed Mar. 23, 2018) (Dow, J.) (upon removal from the Circuit Court, Cook County, Case No. 2018-CH-03686); *Comforte v. Cambridge Analytica*, No. 1:18-CV-02120 (N.D. Ill.) (filed Mar. 22, 2018) (Bucklo, J.)

[5] *Barton v. Facebook, Inc.*, No. 2:18-CV-2105 (C. D. Ill.) (filed Apr. 12, 2018) (Long, Mag.).

[6] *Price v. Facebook, Inc.*, No. 3:18-CV-01732 (N.D. Cal.) (filed Mar. 20, 2018) (Chhabria, J.); *Rubin v. Facebook, Inc.*, No. 3:18-CV-01852 (N.D. Cal.) (filed Mar. 26, 2018) (Chhabria, J.); *Gennock v. Facebook, Inc.*, No. 3:18-CV-01891 (N.D. Cal.) (filed Mar. 27, 2018) (Chhabria, J.); *O'Kelly v. Facebook, Inc.*, No. 3:18-CV-01915 (N.D. Cal.) (filed Mar. 28, 2018) (Chhabria, J.); *Beiner v. Facebook, Inc.*, No. 3:18-CV-1953 (N.D. Cal.) (filed Mar. 29, 2018) (Chhabria, J.); *Haslinger v. Facebook, Inc.*, No. 3:18-CV-01984 (N.D. Cal.) (filed Mar. 30, 2018) (Chhabria, J.); *Kooser v. Facebook, Inc.*, No. 4:18-CV-02009 (N.D. Cal.) (filed Apr. 2, 2018) (Gonzalez Rogers, J.); *Picha v. Facebook, Inc.*, No. 3:18-CV-02090 (N.D. Cal.) (filed Apr. 5, 2018) (Kim, Mag.); *Labajo v. Facebook, Inc.*, No. 4:18-CV-02093 (N.D. Cal.) (filed Apr. 5, 2018) (Westmore, Mag.); *Iron Wing v. Facebook, Inc.*, No. 3:18-CV-02122 (N.D. Cal.) (filed Apr. 6, 2018) (Spero, Mag.); *Johnson v. Facebook, Inc.*, No. 3:18-CV-02127 (N.D. Cal.) (filed Apr. 9, 2018) (Illston, J.); *Gerena v. Facebook, Inc.*, No. 4:18-CV-02201 (N.D. Cal.) (filed Apr. 12, 2018); *Buckles v. Facebook, Inc.*, No. 3:18-CV-02189 (filed Apr. 12, 2018).

[7] *O'Hara v. Facebook, Inc.*, No. 8:18-CV-00571 (C.D. Cal.) (filed Apr. 4, 2018) (Guilford, J.).

[8] *Lodowski v. Facebook, Inc.*, No. 4:18-CV-00907 (S.D. Tex.) (filed Mar. 23, 2018) (Ellison, J.).

[9] *Redmond v. Facebook, Inc.*, No. 1:18-CV-00531 (D. Del.) (filed Apr. 10, 2018) (Thynge, Mag.).

[10] *Williams v. Facebook, Inc.*, No. 2:18-CV-00535 (N.D. Ala.) (filed Apr. 4, 2018) (Proctor, J.).

[11] *Malskoff v. Facebook, Inc.*, No. 2:18-CV-04451 (D.N.J.) (filed Mar. 27, 2018) (Salas, J.).

[12] The *Rubin, Kooser*, and *Redmond* complaints also name Cambridge Analytica's parent entity, SCL Group, and the *Comforte* complaint names Mark Zuckerberg, Facebook's CEO. The *Lodowski* and *Malskoff* complaints name Robert Mercer, a hedge fund manager who reportedly owned Cambridge Analytica. The *O'Hara* complaint also names Stephen Bannon.

4

There also is substantial overlap among the legal theories and causes of action asserted in the various complaints. For example, fifteen actions—*Lodowski*, *Malskoff*, *O'Kelly*, *Price*, *Rubin*, *Beiner*, *Haslinger*, *Kooser*, *O'Hara*, *Williams*, *Labajo*, *Picha*, *Johnson, Gerena*, and this case—allege violations of state consumer protection laws.[13] All center around the same theories of wrongdoing: that Cambridge Analytica and other actors wrongfully exploited Facebook's platform to obtain data that they used for unauthorized purposes, that Facebook should have done more to prevent these wrongs, and that Facebook users were harmed as a result. The nearly identical factual allegations in these complaints all appear to be copied from the same two news reports—articles in *The New York Times* and *The Guardian* published on March 17, 2018.

Finally, all of these actions are in their nascent stages. They were filed in rapid succession over the last few weeks; many of the complaints have not yet been served; few papers beyond the complaints have been filed; and the courts have expended few if any resources.

On March 30, 2018, the plaintiffs in *Beiner* moved to establish an MDL in the Northern District of California for all of the cases alleging harm to Facebook accountholders arising out of alleged misuse of their data. MDL No. 2843, Dkt. 1. That same day, the *Lodowski* plaintiffs cross-moved to establish an MDL over the same actions in the Southern District of Texas, MDL No. 2843, Dkts. 5, 16, and the *Rubin* plaintiffs filed a response supporting the *Beiner* plaintiffs' request for an MDL in the Northern District of California, MDL No. 2843, Dkt. 7. On April 6, 2018, Facebook also filed a response in support of the *Beiner* plaintiffs' motion, MDL No. 2843, Dkt. 19. As set forth in its Response filed with the Panel, Facebook believes that an MDL will be the most efficient and sensible way to handle pretrial proceedings in these actions. Given the many benefits of consolidation, Facebook expects that the Panel will grant the motion, consolidate all of these cases, and assign them to one judicial district for pretrial proceedings.

---

[13] Cal. Bus. & Prof. Code § 17200 (*Lodowski*, *Malskoff*, *O'Kelly*, *Price*, *Rubin*, *Beiner*, *Haslinger*, *O'Hara*, *Labajo*, *Picha*, *Johnson*); Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS 505 (*People of the State of Illinois*, *Comforte*); N.J. Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 (*Malskoff*); Ala. Deceptive Trade Practices Act, Ala. Code § 8-19-1 (*Williams*).

On April 12, 2018, this case was removed from the Circuit Court of Cook County to this Court. Facebook has since filed a Notice of Related Actions to include this action in the MDL, along with the twelve other cases filed after the initial MDL motion that involve similar facts and claims. MDL No. 2843, Dkt. 13, 20, 25, 49. The Panel has scheduled oral argument on the MDL Motion for May 31, 2018. MDL No. 50.[14]

### III.     ARGUMENT

Federal courts possess the inherent power to stay proceedings before them. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* This Court, and others across the country, routinely exercise this power to stay cases pending decisions by the Panel on motions to consolidate and transfer.[15] "[D]istrict courts will often exercise their discretionary power to stay the proceedings before them … pending a decision by the panel regarding the transfer of a case, especially when such a stay would further the policies of judicial economy, efficiency, and consistency that are deeply embedded in the federal multidistrict litigation statute." 15 Charles A. Wright, et al., FED. PRACT, & PROC. § 3866.1 (3d Ed.).

---

[14] This case was not one of the original cases listed in the MDL motion and thus is not one of the cases listed on the Panel's May 31 hearing notice. But MDL procedures provide that if an MDL is established, any follow-on cases (such as this one) will be conditionally transferred, with a final decision on inclusion in the MDL to be resolved shortly thereafter. Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Rule 7.1(b).

[15] *See, e.g., Paul v. Aviva Life & Annuity Co.*, 2009 WL 2244766, at *1 (N.D. Ill. July 27, 2009); *Kavalir v. Medtronic*, 2007 WL 1225358, at *4 (N.D. Ill. Apr. 19, 2007); *Bd. of Trustees of Teachers' Ret. Sys. of State of Illinois v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905-06 (N.D. Ill. 2002); *Tench v. Jackson Nat. Life Ins. Co.*, 1999 WL 1044923, at *1 (N.D. Ill. Nov. 12, 1999) ("[S]tays are frequently granted to avoid duplicative efforts and preserve valuable judicial resources."); *Smith v. Merck & Co.*, 2006 WL 3842190, at *1 (S.D. Ill. Dec. 29, 2006); *Walker v. Merck & Co.*, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005); *Smith v. Merck & Co.*, 2006 WL 3842190, at *1 (S.D. Ill. Dec. 29, 2006); *Walker v. Merck & Co.*, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005); *Packer v. Power Balance, LLC*, 2011 WL 1099001, at *1 (D.N.J. Mar. 22, 2011) ("Stays of a civil actions are common when the issue of transfer is before the JPML."); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (courts "frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case"); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) ("[I]t is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the Panel because of the judicial resources that are conserved.").

"In deciding whether to grant a stay pending the [Panel's] decision to transfer a case to an MDL, courts consider: (1) whether judicial economy favors a stay; (2) the potential prejudice to the non-moving party; and (3) any hardship or inequity to the moving party if the case is not stayed." *Paul*, 2009 WL 2244766, at *1; *see also Walker v. Merck & Co.*, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005) ("In considering a motion for stay, courts consider both the interest of judicial economy and the potential prejudice or hardship to the parties."). All of these factors strongly support a stay of the proceedings before this Court until after the pending MDL Motion is resolved.

### A. Judicial economy favors a brief stay of this case

A stay of these proceedings is appropriate because it would promote the "compelling public interest" in judicial economy. *Paul*, 2009 WL 2244766, at *1; *see also Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 992 (C.D. Ill. 2011) (staying proceedings pending motion to transfer to MDL based solely on "considerations of judicial economy"). Absent a stay pending a decision from the Panel, this Court would "run the risk of expending valuable judicial resources familiarizing [it]self with the intricacies of a case that may be coordinated or consoli[dated] for pretrial purposes in another court." *Paul*, 2009 WL 2244766, at *1. If the Panel transfers this action, this Court will "have wasted judicial resources by addressing various pre-trial motions that could have been resolved in the transferee court." *Id*. "There is simply no reason for this Court to expend its time and energy on [this] case[] until the pending motion before the Panel is resolved, as transfer of this matter to another court would render redundant the efforts of this Court." *Fuller v. Amerigas Propane, Inc.*, 2009 WL 2390358, at *2 (N.D. Cal. Aug. 3, 2009); *see also Rivers*, 980 F. Supp. at 1360-61 (stay would avoid needless expenditure of the Court's "energies familiarizing itself with the intricacies of a case that [may] be heard by another judge"); *Ellis*, 798 F. Supp. 2d at 992 (because case might ultimately be transferred via the MDL, "there would be little or no reason for this Court to expend its resources in the meantime to no avail"). Such "[d]uplication of case management tasks by multiple courts is not an economical use of judicial resources," *Fuller*, 2009 WL 2390358, at *2, and would run counter to the

7

"policies of judicial economy, efficiency, and consistency that are deeply embedded in the federal multidistrict litigation statute," 15 Wright & Miller, FED. PRACT. & PROC. § 3866.1 (3d Ed.); *see also Paul*, 2009 WL 2244766, at *1 (noting that a stay pending a decision on an MDL motion "would conserve judicial resources by avoiding duplicative litigation").

To the extent Plaintiffs intend to oppose inclusion of this case in the MDL for any reason, such issues should be decided by the Panel itself—that is, in fact, one of the Panel's core functions. *See Illinois Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004) (emphasizing that the Panel is "empowered to effectuate th[e] goal of … centralizing litigation involving one or more common questions of fact that are pending in different districts.") (internal quotations omitted). It would therefore promote judicial efficiency, and further the goals of MDL statute, to await the Panel's decision regarding consolidation and transfer before proceeding with this case. *See Paul*, 2009 WL 2244766, at *1.

In sum, given the early stage of the litigation and the strong possibility that this case will be transferred to a different district, "the interests of judicial economy will be best served by staying the proceedings until its likely transfer to the MDL." *Kavalir*, 2007 WL 1225358, at *4.

### B. A brief stay pending the Panel's decision would not prejudice Plaintiff

The brief stay Facebook seeks will cause no prejudice to Plaintiff—and may, in fact, prove beneficial to *all* parties by avoiding needless expense and duplication of effort.

The proposed stay is likely to be brief. The MDL motion will be heard at the Panel's next session on May 31, 2018, and the Panel will likely render a decision on the motion shortly thereafter. Given the anticipated duration of the stay, any potential prejudice to Plaintiff would be "minor." *Paul*, 2009 WL 2244766, at *1; *see also Nekritz v. Canary Cap. Partners, LLC*, 2004 WL 1462035, at *4 (D.N.J. Jan. 12, 2004) ("[A]ny prejudice to the Plaintiff from a relatively brief delay in pursuing his claims will be minimal."); *Good*, 5 F. Supp. 2d at 809 (finding that stay of case pending Panel's transfer decision would not prejudice the plaintiff where the stay "would likely be brief").

8

Furthermore, this case is still at a very early stage and discovery has not yet begun, which further diminishes the potential for prejudice to Plaintiff. *See Paul*, 2009 WL 2244766, at *1 ("any potential prejudice" to plaintiff would be "minimal" where "case has only been pending for five months and discovery has yet to begin"); *Fuller*, 2009 WL 2390358, at *1 (observing "no meaningful prejudice … to Plaintiff" where the case was in "very early procedural stages" and the Panel was "expected to hear [the] matter within a few months").

Not only would Plaintiff not be prejudiced by a brief stay, but allowing for the cases to be centralized may *prevent* the prejudice to the parties that would occur if these cases were litigated in a piecemeal fashion, which would create an acute risk of inconsistent rulings. At the very least, a stay would prevent the burden and expense of unnecessarily briefing a potential motion to dismiss that may later become redundant upon transfer. *See Ernyes-Kofler v. Sanofi S.A.*, 2017 WL 813506, at *2 (N.D. Cal. Mar. 2, 2017) (noting that a stay "might help Plaintiffs avoid unnecessary effort and expense"). Ultimately, "once the cases are coordinated and the defendants are able to respond to all the complaints in a coordinated manner, more time may be saved than was lost." *Rosenfeld v. Hartford Fire Ins. Co.*, 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988). And, in the event that the Panel denies centralization, the stay would be lifted and the parties would proceed expeditiously in this case, with no resulting burden on Plaintiff.

### C. Facebook would suffer prejudice from duplicative litigation and the risk of inconsistent rulings absent a stay

In contrast to the *de minimis* prejudice to Plaintiff from a brief stay, the prejudice to Facebook will be substantial if this case is not stayed. "[A]llowing pretrial proceedings to continue poses a significant risk of duplicative motions" and would "result in needless expense and inequity to [Defendants]." *Azar v. Merck & Co.*, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006). The Panel will hear oral argument on the MDL Motion on May 31—*after* Defendants' responses to Plaintiff's complaint is due. As a result, absent a stay, Facebook would be required to duplicate efforts by responding to the complaints in this case, only to have that response mooted by a consolidated amended complaint that would likely be filed once the Panel

9

centralizes the cases. Such duplicative motion practice would impose substantial burdens on Facebook, in addition to wasting any efforts this Court will have to expend to address the resulting motion practice. *See AbbVie*, 2014 WL 7205586, at *3; *accord Azar*, 2006 WL 3086943, at *1; *Falk v. Gen. Motors Corp.*, 2007 WL 3101649, at *3 (N.D. Cal. Oct. 22, 2007) ("Costs and financial burden on a party having to defend itself in multiple fora is a factor that favors the entry of a stay pending a decision by a JPML."); *Weaver v. Pfizer, Inc.*, 2014 WL 2002212, at *4 (E.D. Cal. May 15, 2014) (acknowledging burden defendant faces if forced to "defend itself in multiple fora," then "relitigate any decisions … if the case is transferred to the MDL court"); *Gibson v. Bristol–Myers Squibb Co.*, 2013 WL 2081964, at *1 (N.D. Cal. May 14, 2013) (same); *see also Worldcom*, 244 F. Supp. 2d at 905 ("litigat[ing] essentially the same claims in courts all over the country" is prejudicial).

Moreover, if Facebook were forced to respond to the complaints pending in the various districts before the Panel makes a decision, it would risk inconsistent rulings on case-dispositive motions. *See Paul*, 2009 WL 2244766, at *2 (defendant "could be faced with conflicting decisions on similar pre-trial issues from this court and the transferee court if [the Court] were to decline the stay and continue the litigation."); *see also Bd. of Trustees of Teachers' Ret. Sys.*, 244 F. Supp. at 905 (granting stay pending Panel decision and noting "genuine" risk of inconsistent rulings "given the difficulty of the jurisdictional issues presented" in remand motion). The twenty-one complaints pending in this and other districts allege overlapping claims arising under various state consumer protection and privacy statutes, federal statutes, and common-law theories. Litigating these common issues in multiple courts would deprive the parties of the very benefits the MDL procedure is intended to secure—"judicial economy and [the] eliminat[ion of] the potential for conflicting pretrial rulings." *Tench*, 1999 WL 1044923, at *1.

Under these circumstances, "the potential prejudice to [Defendants] if [they are] required to re-argue the same issues before various courts is greater than the potential prejudice Plaintiffs may face as a result of a slight delay because of the issuance of a stay." *AbbVie*, 2014 WL 7205586, at *3; *see also A.D. v. Pfizer, Inc.*, 2013 WL 3889159, at *2 (N.D. Cal. July 26, 2013)

(the "potential prejudice to [p]laintiffs that could result from a stay [is] minimal," whereas defendants face "the risk of unnecessary proceedings and inconsistent rulings on recurring questions of law and fact if the case [is] not stayed").

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that this Court stay all further proceedings in this case pending a decision from the Panel on the Motion to Consolidate and Transfer filed in MDL No. 2843.

DATED: April 17, 2018

Respectfully submitted,

**EIMER STAHL LLP**

By: */s/ Nathan P. Eimer*
Nathan P. Eimer
 neimer@eimerstahl.com
Susan M. Razzano
 srazzano@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: 312.660.7600
Fax: 312.692.1718

**GIBSON, DUNN & CRUTCHER, LLP**

Orin Snyder
 osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, N.Y. 10166
Tel: 212.351.2400
Fax: 212.351.6335

Joshua S. Lipshutz
 jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8217
Fax: 202.530.9614

       Kristin A. Linsley
        klinsley@gibsondunn.com
       GIBSON, DUNN & CRUTCHER LLP
       555 Mission Street
       Suite 300
       San Francisco, CA 94105
       Tel: 415.393.8379
       Fax: 415.374.8474

       *Attorneys for Defendant Facebook, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, certifies that he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                                  */s/ Nathan P. Eimer*